## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1)  **HALEY I. HEATH, an individual,**      ) | |
| )  | |
| **Plaintiff,**      ) | |
| **v.**      ) | |
| )  | **Case No.** CIV-21-136-J |
| 1)  **BADGER VALLEY INVESTMENTS,**      ) | |
| **LLC, d/b/a SETH WADLEY FORD, an**      ) | **JURY TRIAL DEMANDED** |
| **Oklahoma limited liability company,**      ) | |
| )  | |
| **Defendant.**      ) | |

## <u>COMPLAINT</u>

**COMES NOW**, the Plaintiff, Haley I. Heath ("Plaintiff") and for her Complaint against Defendant Badger Valley Investments, LLC, d/b/a/ Seth Wadley Ford (hereinafter "Seth Wadley Ford" and/or "Defendant"), alleges and states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff is an individual residing within Garvin County, Oklahoma.

2.      Defendant is an Oklahoma limited liability company with its principal place of business in Pauls Valley, Oklahoma, Garvin County, Oklahoma.

3.      The actions which give rise to Plaintiff's claims occurred within Garvin County, Oklahoma.

4.      On July 23, 2019 Plaintiff filed her complaint with the Equal Employment Opportunity Commission ("EEOC").  On October 31, 2019 an interview with the EEOC was conducted.  On May 27, 2020 a Charge was mailed to Plaintiff which was completed by Plaintiff and returned to the EEOC on June 1, 2020.  On or about November 23, 2020, the EEOC issued Plaintiff a "right to sue" letter.  Therefore, pursuant to Title VII of the Civil Rights Act of 1964,

as codified, 42 U.S.C.A. § 2000e *et seq*.  Plaintiff may initiate suit against the Defendant at this time.

5.      This Court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331 and § 1343 over this Complaint which alleges a violation of 42 U.S.C. § 2000e *et seq*. and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district, pursuant to 28 U.S.C.A. § 1391(b), based upon Defendant's principal place of business within the Oklahoma Western District Federal Court.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

**7**.      Plaintiff was employed as a receptionist by Defendant Seth Wadley Ford car dealership from approximately July 14, 2018 through May 15, 2019 when she was constructively discharged and forced to terminate her employment due to the pervasive unlawful, unwanted, unbearable, intolerable, and ongoing sexual harassment and hostile work environment which prevailed at Seth Wadley Ford.

8.      Plaintiff was only 18 years old at the time of her hire and only 19 years of age when she was constructively discharged as a direct cause of the unwanted, pervasive, severe, and ongoing sexual harassment and hostile work environment at Defendant Seth Wadley Ford.

9.      In or around October of 2018, Defendant Seth Wadley Ford was informed and put on notice of the ongoing incidents of sexual harassment against Plaintiff.

10.      Defendant Seth Wadley Ford had a duty and responsibility to prevent sexual harassment against Plaintiff in its workplace and failed to fulfill this duty.  Despite begin made aware of the pervasive sexual harassment against Plaintiff, Defendant failed to promptly correct it despite allegedly involving an attorney and speaking to one of the perpetrators. The ongoing pervasive sexual harassment continued unfettered against Plaintiff.

11.     The incidents of unwanted sexual harassment and hostile work environment were numerous and ongoing.  The majority of the pervasive incidents of unwelcome and sexually harassing behavior against Plaintiff were perpetrated by the General Manager of Seth Wadley Ford, Shane Cole.  However, other employees of Seth Wadley Ford, all superior to Plaintiff in employment status, also perpetrated unwelcome and sexually harassing conduct toward Plaintiff. These individuals include:  Chris Trimble, Mark Russell, Luke Cape, Chris Landeros, Quinton Gentry, and Chris Howell.

12.     Plaintiff was subjected to verbal, sexual, and physical harassment by these perpetrators on an almost constant basis throughout her employment with Defendant Seth Wadley Ford.

13.     Seth Wadley Ford Manager Shane Cole's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.     Mr. Cole would impermissibly grope Plaintiff from behind, touching around her upper abdomen, breasts, ribs, and lower waist. This happened multiple times a week beginning in and around September of 2018 and carried on until Plaintiff was forced to resign due to the unbearable hostile work environment.

b.     Mr. Cole pinned Plaintiff up against her desk in her chair from behind and groped Plaintiff. This happened on multiple occasions.

c.     Mr. Cole would grab Plaintiff with one hand placed on her neck and the other hand placed near, and sometimes touching, her vagina and lift Plaintiff over his head onto his shoulders. This was also reported to owner Seth Wadley who reviewed tapes showing this attack. Upon information and belief, Mr. Cole was "written up," but Plaintiff was never spoken to regarding the incident.  Mr. Cole confronted Plaintiff and complained that he got in trouble because of her and intimidated and threatened her as if she had done something wrong.

d.     Mr. Cole poured a cold bottle of water down Plaintiff's shirt while she was sitting at her desk. Plaintiff had to go to the bathroom and dry her shirt so people would not stare at her.

e.     Mr. Cole would come up behind Plaintiff without Plaintiff seeing or hearing him and put his hands on her lower waist, middle abdomen, and ribs under her breasts and scare

Plaintiff to make her jump or scream. This happened almost every day further demonstrating the fear Plaintiff experienced by working in these conditions. On one occasion, Mr. Cole announced to other employees at Seth Wadley Ford that Plaintiff was probably a "screamer" (a sexual reference) shortly after one of these abusive incidents.

f.      Mr. Cole came up behind Plaintiff and put his hands underneath her arms through the breast area and placed his hands behind her head as in a choke hold and said she had nice back muscles. This happened in the managers' tower in front of the other sales managers.

g.      Mr. Cole would impermissibly touch Plaintiff's hair and tell her that it was pretty or very soft. This happened multiple times and any time she wore her hair in a different style.

h.      Mr. Cole came up behind Plaintiff at her desk and impermissibly touched and massaged her shoulders.

i.      Plaintiff told Mr. Cole frequently not to touch her. Mr. Cole's retort would always be "Oh, do you want to wrestle?" and then proceed to impermissibly grope Plaintiff again.

j.      Mr. Cole frequently and impermissibly tried to "wrestle" Plaintiff which was nothing more than a thinly veiled excuse to grope Plaintiff impermissibly.

k.      Mr. Cole told Plaintiff she should sit down because the employees "could not stop looking at her butt."

l.      Mr. Cole told Plaintiff she was a "distraction" to him and that "she couldn't come to work looking like that or else he couldn't get any work done."

m.      Mr. Cole told Plaintiff that he could tell she "had been doing her squats" referring to Plaintiff's legs and buttocks.

n.      Mr. Cole offered to pay Plaintiff $100 dollars for her "peanut butter sandwich" which was intended to infer an unwanted sexual encounter.

o.      Mr. Cole unwantedly suggested he take Plaintiff out to dinner and to get a pedicure.

p.      Mr. Cole unwantedly offered to be Plaintiff's "Sugar Daddy" and asked her if his age of 33 was too old for her.

q.      Mr. Cole frequently tried to get Plaintiff his cell phone number and pass code. In an unwanted and forceful manner Mr. Cole grabbed Plaintiff's cell phone and tried to unlock it. He insisted that Plaintiff reveal her cell phone password to him and that he would not take "no" for an answer.  Plaintiff refused.

4

r.      Mr. Cole constantly pressured Plaintiff to tell him details about her personal life and who she was dating.  He was very pushy and demanding and frequently told Plaintiff that she was settling for her current boyfriend and that her boyfriend was not mature enough for her.  Mr. Cole frequently told Plaintiff that she deserves to be treated the way *he* would treat her and the things that *he* does that her boyfriend should be doing.

s.      Mr. Cole unwantedly offered for Plaintiff to come try his massage chair at his house.

t.      Mr. Cole, in a meeting which Plaintiff was forced to attend on the sales floor, offered to pay each person $100 for taking a Viagra pill at work which he had in his possession.

14.     Seth Wadley Ford employee Chris Trimble's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Trimble came up from behind Plaintiff and unwantedly massaged her shoulders despite being told by her "no" and to "stop."

b.      Mr. Trimble made multiple unwanted advances at Plaintiff, including asking her if they could get married. Mr. Trimble unwantedly flirted with her every time she had to bring a message or package to his office, which was at least twice a week. He would frequently come to the front desk where Plaintiff was stationed and would throw things at her in an attempt to grab her attention. He once came to her desk and impermissibly took a photo of Plaintiff and said he sent it to a group chat he had with his co-workers.

c.      Mr. Trimble once stated to other employees of Defendant, while eating a barbeque rib, that he "would do *this* to Plaintiff" while licking up and down the rib.

15.     Seth Wadley Ford employee and former manager Chris Howell's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Howell told Plaintiff that she came to work looking like she was going to prom because she had makeup on.  Mr. Howell then complained that "he probably would not even be given a chance" (meaning sexually) by Plaintiff.

b.      Mr. Howell inexcusably and impermissibly grabbed Plaintiff's breast.

16.     Seth Wadley Ford employee Mark Russell's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Russell demanded that Plaintiff send him a snapchat picture of her "landing strip" referring to her pubic hair and vagina.

b.      Mr. Russell also told Plaintiff multiple times he was going to marry her.

c.      Mr. Russell also asked Plaintiff to have his children.

d.      Mr. Russell frequently attempted to get Plaintiff to share details about her sexual activity and would publicly tell Plaintiff that he believed she was "naughty" and "only pretending to be innocent."

17.     Seth Wadley Ford employee Luke Cape's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Cape came to Plaintiff's desk and said, "Your boobs look nice and perky in that t-shirt." Plaintiff told Mr. Cape to never say that to her again.

b.      The following day, Mr. Cape told other salespeople that Plaintiff's "tits looked perfect today."

18.     Seth Wadley Ford employee Chris Landeros' unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Landeros (a Hispanic male) asked Plaintiff "if she had a little Mexican in her?" When Plaintiff responded "No," Mr. Landeros replied: "Well not yet, but you will soon."

19.     Seth Wadley Ford employee Quinton Gentry's unwanted and sexually harassing conduct directed at Plaintiff includes but is not necessarily limited to:

a.      Mr. Quinton Gentry told Plaintiff "You are wearing the shit out of those jeans."

20.     The pervasive and unwanted sexual harassment and hostile work environment was clearly directed at Plaintiff by the agents and employees of Defendant because she was a female and thus, on the basis of sex.

21.     Complaints about the sexual harassment were reported to owner Seth Wadley by Plaintiff and other observers who witnessed the same.  All complaints were ignored or otherwise only ostensibly and superficially investigated without taking any reasonable or necessary action to cause such conduct to cease.  Plaintiff was not questioned, was not made to feel safe, was not

assured her job was secure, and was not encouraged or allowed to participate in any complaint process or even be interviewed.

22.   Seth Wadley Ford manager and other employees, however, were permitted to maintain their employment positions and continued the sexual abuse, and hostile work environment unchecked as though it was approved of by management and owners.   Thus, Defendant Seth Wadley Ford ratified of the ongoing sexual harassment by its employees and agents.

23.   Because of this, Plaintiff became increasingly afraid and intimidated to report ongoing incidents to Mr. Wadley for fear of losing *her* job.

24.   Seth Wadley took no meaningful remedial action in response to the complaints, and in fact, the hostility in Plaintiff's work environment escalated to intolerable levels.

25.   On or about May 15, 2019, Plaintiff was forced to resign her employment at Seth Wadley Ford because she could no longer endure the pervasive hostile work environment and sexual harassment directly caused by the agents and employees of Defendant, which was ratified by the inaction of Defendant. Indeed, Plaintiff suffered harassment and discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign and her decision to resign was reasonable given the totality of circumstances.

26.   Plaintiff's constructive discharge was a tangible employment alteration directly caused by Defendant's employees and agents. Indeed, Plaintiff needed the pay from her employment with Defendant for school and travel expenses.  But for the hostile work environment directly caused by Defendant, Plaintiff would not have resigned her position with Defendant Seth Wadley Ford.

27.   Defendant Seth Wadley Ford is vicariously liable for the sexual harassment and

hostile work environment created and caused by its employees and agents as described above.

## COUNT I:

### SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

28.      Plaintiff adopts and reasserts the allegations in the preceding paragraphs as though fully set forth herein.

29.      As shown by the facts above, Plaintiff was subjected to discriminatory conduct, severe, pervasive, unwanted, and ongoing sexual harassment by Seth Wadley Ford and its agents and employees in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.*

30.      Defendant's conduct had the effect of unreasonably interfering with Plaintiff's work environment.

31.      Defendant's conduct created an intimidating and hostile work environment for Plaintiff, and as a result thereof she was forced to resign her position.

32.      Defendant ratified the acts of its agents and employees by failing to take remedial actions after being notified of the sexual harassment.

33.      The conduct complained of constitutes illegal sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

34.      Plaintiff has been damaged by Defendant's discrimination and constructive discharge in an amount in excess of $75,000.00

## COUNT II:

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

35.      Plaintiff adopts and reasserts the preceding paragraphs as though fully set forth fully herein.

36.     As shown by the facts above, Plaintiff was subjected to continuous unwanted, severe, pervasive, and ongoing sexual harassment.

37.     Defendant's conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and created a sexually abusive, verbally abusive, emotionally abusive, and physically abusive hostile work environment.

38.     Plaintiff reasonably perceived her working environment to be abusive and hostile, and Defendant took no meaningful remedial action to address the situation.

39.     The conduct complained of constitutes a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

40.     Plaintiff has been damaged by Defendant's discriminatory conduct, hostile work environment, and constructive discharge in an amount in excess of $75,000.00

## COUNT III:

## CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII

41.     Plaintiff adopts and reasserts the preceding paragraphs as though fully set forth herein.

42.     The described sexual harassment of plaintiff, by and through the conduct of Defendant and its agents and employees, was solely based on Plaintiff being female.

43.     Plaintiff, by being subjected to this sexual harassment and sexually hostile, offensive work environment created by Defendant and its employees and agents, was unreasonably affected in her employment and her psychological well-being. Moreover, Plaintiff was subject to adverse action by her employer, by and through the actions of its agents and employees, when she was forced to resign her position due to the intolerable work environment, pervasive and ongoing sexual harassment, and humiliating, disparate working conditions directly caused by Defendant

and its agents and employees.

44.     Plaintiff was verbally, sexually, and physically harassed by employer Seth Wadley Ford and its agents and employees on a nearly daily basis.

45.     Because of the ongoing and intolerable sexual harassment and hostile work environment, Plaintiff was forced to resign her employment with Defendant Seth Wadley Ford.

46.     The conduct complained of constitutes constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

47.     Plaintiff has been damaged by Defendant's discriminatory conduct resulting in her constructive discharge in an amount in excess of $75,000.00.

**COUNT IV:**

**SEXUAL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF OKLAHOMA LAW.**

48.     Plaintiff adopts and reasserts the preceding paragraphs as though fully set forth herein.

49.     The Oklahoma Anti-Discrimination Act prohibits all public and private employers from discriminating against applicants or employees based on sex (*OK Stat. Tit. 25 Sec. 1101 et. seq.*). Interpretive guidelines issued by the Oklahoma Human Rights Commission expressly provide that sexual harassment is a violation of the state's Anti-Discrimination Act (*OK Admin. Code Sec. 335:15-3-10*).

50.     The state Human Rights Commission defines sexual harassment as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when submission to the conduct is made a term or condition of employment, is used as a basis for employment decisions affecting the individual, unreasonably interferes with the individual's work

performance, or creates a hostile, intimidating, or offensive working environment (*OK Admin. Code Sec. 335:15-3-10*).

51.     The facts set forth above including the pervasive, unwelcome, and ongoing severe sexual harassment and hostile work environment created by Defendant Seth Wadley Ford, and Plaintiff's constructive discharge directly caused by the same, is in violation of the Oklahoma Anti-Discrimination Act, 25 O.S. § 1101, *et. seq.*

52.     The constructive termination of Plaintiff by Defendant also constitutes wrongful termination against Oklahoma public policy under *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24.

53.     Plaintiff has been damaged by the violations of the Oklahoma Anti-Discrimination Act, 25 O.S. § 1101, *et. seq.* and her wrongful termination in an amount in excess of $75,000.00.

54.     Further, Plaintiff is entitled to punitive damages in an amount sufficient to deter Defendant from similar wrongful conduct in the future which should be in excess of $75,000.00.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Haley Heath demands judgment against Defendant Badger Valley Investments, LLC, d/b/a Seth Wadley Ford on each and every one of her Claims and Counts, including but not necessarily limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, interest, and for such further relief as the Court and the law deems just and equitable.

Respectfully submitted,

By:_____  *s/Michael L. Barkett*
Michael L. Barkett, OBA #16171
Rusty Smith, OBA #19575
Dan Medlock, OBA #20092
Smith Barkett Law Group
1202 East 33rd Street
Tulsa, Oklahoma  74105
918.582.6900 – Telephone

11

918.582.6907 – Facsimile
mbarkett@barkettlaw.net
rsmith@smithbarkett.com
dmedlock@smithbarkett.com